DAVIDOFF HUTCHER & CITRON LLP  
*Attorneys for the Debtor*  
605 Third Avenue  
New York, New York 10158  
(212) 557-7200  
Robert L. Rattet  
Jonathan S. Pasternak  

*Hearing Date: March 28, 2023*  
*Hearing Time: 11:30 a.m.*

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
--------------------------------------------------------X  
In re:  

NUVO TOWER LLC,  

         Debtor.  
--------------------------------------------------------X  

Chapter 11  

Case No.: 22-41444 (NHL)  

### DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF ASSETS OF THE ESTATE AND (II) AUTHORIZING AUCTION SALE

**TO THE HONORABLE NANCY H. LORD,**  
**UNITED STATES BANKRUPTCY JUDGE:**

  The debtor and debtor-in-possession, Nuvo Tower LLC (the "Debtor"), by its attorneys, seek the entry of an order (the "Bidding Procedures Order"), a proposed form of which is annexed to this application as Exhibit A, authorizing and approving the terms of sale (the "Bidding Procedures") for the proposed sale of the Debtor's real property as more fully set forth below, and authorizing the Auction[1] pursuant to 11 U.S.C.§§105(a), 363 and 365 of Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Motion").  In support thereof, the Debtor states:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures.

## JURISDICTION AND VENUE

1.  Jurisdiction over this application is vested in the United States District Court for this District pursuant to 28 U.S.C. §1334.

2.  This is a core proceeding arising under title 11 of the United States Code the "Bankruptcy Code"). See 28 U.S.C. §157(b)(1). The statutory predicate for the relief sought is Sections 105(a), 363 and 365 of the Bankruptcy Code.

3.  Venue of this civil proceeding in this district is proper pursuant to 28 U.S.C. §1409.

## BACKGROUND

4.  On June 22, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.  The Debtor is owning and managing its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee of unsecured creditors has been appointed.

6.  The Debtor owns 4 contiguous lots located at 2954-2958 Brighton 6th Street and 6-7 Brighton Fifth Place in the Brighton Beach section of Brooklyn, which lots are intended for construction of a 23-unit condominium complex (the "Property"). The Property is zoned for multi-residential use and the lots have been consolidated into one tax lot by the City of New York.

7.  The Debtor acquired title to the Property in 2017 for the approximate purchase price of $700,000. The Property has been recently appraised in its current state at $4,300,000. Since such time, and with the Covid-19 pandemic intervening, the Debtor has worked strenuously on architectural, mechanical, and structural plans to build out the condominium

complex and has finally obtained approvals from the City of New York Dept. of Buildings for a 23-unit condominium. The Property is "shovel ready" for construction.

8. As set forth in the Declaration of *Haim Pinhas Pursuant to Local Bankruptcy Rule 1007-4* [ECF No. 4], on August 7, 2017, the Debtor took out a high interest mortgage from Bayport Funding, LLC ("Bayport) in the principal amount of $1,500,000 against the Property. Due to financial difficulties before, and exacerbated after the Covid 19 Pandemic, in February 2022, Bayport obtained a judgment of foreclosure which, together with accrued interest at the default rate up the judgment date and statutory 9% interest accruing thereafter, is currently in the approximate aggregate amount of $2,800,000, which the Debtor disputes.

9. To address those issues above, the Debtor has determined to either sell the Property via auction or obtain financing that will be secured by the Debtor's interest in the Property and fund the Debtor's proposed Chapter 11 plan , which provides for payment in full of all creditors. To assist the Debtor in obtaining this financing or auction, the Debtor seeks to engage Rosewood Realty Group ("Rosewood") as its real estate advisor to either sell the Property at an auction or solicit and secure a commitment or commitments for a refinancing of the Property.

10. The Debtor filed its Second Amended Plan of Reorganization on January 4, 2023, which plan contemplates that unless the Property has refinanced after the Effective Date of the plan, the Property will be sold pursuant to the Bidding Procedures. The Debtor filed its Third Amended Plan of Reorganization (the "Plan") on January 30, 2023.

11. On February 6, 2023, Bayport assigned its claim to Ramim LLC ("Ramim"). Ramim is now accordingly the successor-in-interest to Bayport.

## RELIEF REQUESTED

12. By this Motion, the Debtor seeks entry of the Bidding Procedures Order, pursuant to sections 105(a) and 363 of the Bankruptcy Code authorizing it to implement the Bidding Procedures, annexed hereto as Exhibit "B" for the sale of the Property. The Debtor also seeks authority to sell the Property to the highest and best bidder(s), free and clear of all liens, claims and encumbrances, but subject to the right of Ramim to credit bid. Accordingly, it is important that the Bidding Procedures be in place, and the authority to sell be granted.

### Marketing Process

13. Subject to entry of an order authorizing the retention of Rosewood, Rosewood is ready to commence the marketing process for the Property. Accordingly, it is important that the Bidding Procedures be approved. The Property shall be offered for sale "as is", "where is", and free and clear of all liens, claims and encumbrances (other than Assumed Contracts), with any such liens, claims and encumbrances to attach to the proceeds in the order, priority and extent as they existed on the Petition Date.

### Proposed Bidding Procedures

14. To optimally and expeditiously solicit, receive and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed the Bidding Procedures to govern the sale of the Property. The Bidding Procedures are designed to encourage all entities to put their best bids forward and enhance the value to the Debtor's estate. All parties are directed to review the Bidding Procedures for their specific terms.

15. In furtherance of the Bidding Procedures Order, Rosewood will prepare sales and marketing materials for circulation along with the Bidding Procedures to potential buyers in

order to maximize the value of the Property. Interested purchasers may be required to enter into confidentiality agreements with Rosewood prior to their being provided with confidential information regarding the Property.

16. The Bidding Procedures set forth the parameters for which the Debtor and Rosewood will consider bids for the purchase of the Property. Additionally, the Bidding Procedures: (a) provide that the Debtor will send all bidders a form of Purchase and Sale Agreement (the "PSA"), (b) set a bid deadline; (c) define requirements for qualified bids; and (d) set an auction date on or before May 15, 2023. The Bidding Procedures also provide for, at the Debtor's discretion, the selection of one or more stalking horses as well as the possibility that the Debtor provides for a breakup fee (the "Breakup Fee"). In the event the Debtor selects one or more stalking horses, the Debtor will file a supplemental notice with the Court identifying the stalking horse and the terms of the stalking horse bid, including any Breakup Fee, and providing parties with the opportunity to object. The Bidding Procedures also recognize Ramim's right to submit a credit bid for the Property.

17. The Plan provides for the sale of the Property contemplated by the Bidding Procedures and, upon the selection of a Successful Bidder, at the conclusion of the Auction(s) the Debtor will present the successful bid(s) to the Court for approval.

## BASIS FOR RELIEF

### I. The Relief Sought in the Bidding Procedures Order Is in the Bests Interests of the Debtor's Estate and Should be Approved

18. By this Motion and the Plan, the Debtor seek this Court's authorization to sell the Property by public auction sale in accordance with the Bidding Procedures.

19. The sale of the Property is appropriate and necessary; however, approval of the Bidding Procedures is warranted to ensure that the highest and best offer will be received for the

Property. The Debtor anticipates that the closing on the sale of the Property will be conducted pursuant to an order of this Court.

20. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets by the estate. See, e.g., *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs*., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

21. The goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., *In re Food Barn Stores, Inc*., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

22. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., *Integrated Resources,* 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.,* 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis

for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

23. The Debtor believes that the Bidding Procedures will promote active bidding and will elicit the best and highest offers available for the Property. The Bidding Procedures will allow the Debtor to conduct the sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best bids for the Property, and who can demonstrate the ability to close a transaction. The Debtor believes that the Bidding Procedures will encourage competitive bidding, that they are consistent with other procedures previously approved by this District, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources,* 147 B.R. at 659; *995 Fifth Avenue Assocs.,* 96 B.R. at 28; *see e.g., In re BearingPoint, Inc.,* No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving similar bidding procedures); *In re Silicon Graphics, Inc.,* No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009); *In re Steve & Barry's Manhattan LLC,* No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008); *In re Fortunoff Fine Jewelry and Silverware, LLC,* No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008).

24. Based upon agreement by the Debtor, the Debtor expects to request approval of an Auction process that will last from now until May 15, 2023

25. Section 363(b) of the Bankruptcy Code governs the sale of assets outside the ordinary course of business. Section 363(b)(1) provides, in relevant part, that "[t]he [Debtor], after notice and hearing, my use, sell or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the sound discretion of the debtor. *See In re Iridium Operating, LLC*, 478 F.3d (2d Cir. 2007) ("In

this Circuit, the sale of the asset of the estate under §363(b) is permissible if the 'judge determined [the] §363(b) application expressly find[s] from the evidence presented before [him or her] at the hearing that [there is] a good business reason to grant such an application.' (citing *Comm Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F. 2d 1063, 1071 (2d Cir. 1983)); *see also Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 145 **(2nd** Cir. 1993); *In re Dial-A-Mattress Operating Corp.*, 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); *In re Hirsch*, 360 B.R. 43, 45-46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application' (quoting *In re Lionel Corp.*, 722 F.2d at 1071)); *In re Thomson McKinnon Sec., Inc.*, 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

26. In addition, Section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case. 2 COLLIER ON BANKRUPTCY ¶105.01 (Alan N. Resnick and Henry J. Sommer Eds., 16th ed.).

27. In accordance with Bankruptcy Rule 6004(f)(a), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale will most often result in a greater number of potential bidders in the shortest amount of time. That is, in order to determine that a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer period of time than when offered at a public sale.

28. Here, sound business reasons exist for the proposed sale, which will effectively result in the sale of substantially all of the Debtor's assets. See *In re Dial-A-Mattress Operating Corp.*, 2009 Bankr. LEXIS 1801 (a debtor's decision to sell substantially all of its assets to the highest bid at an auction was an appropriate business judgment decision because the highest bid presented the greatest benefits to the Chapter 11 estate).

29. The Debtor has a substantial business justification for the proposed sale of the Property. The Debtor believes that the sale of the Property is appropriate and necessary and the parties have agreed to the Bidding Procedures.

## II.     The Assets Will Be Sold free and Clear Of All Liens

30. Bankruptcy Code Section 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the property id disputed; or (e) the entity with an interest in the last asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. *See* 11 U.S.C. §363(f).

31. Since Bankruptcy Code Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to approve the sale of the ISRS Property and the IRS Property "free and clear" of liens, claims, encumbrances and interests (other than the Assumed Contracts). *See* 11 U.S.C. §363(f); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (recognizing that Section 363(f) of the Bankruptcy Code is written in disjunctive, and holding that Court may approve sale "free and clear" provided that at least one subsection of Section 363(f) is met), *cert dismissed*,

503 U.S. 978 (1992); *Citicorp Homeowners Servs., Inc. v. Elliot (in re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

32. Here, as reflected in the Bidding Procedures, the sale of the Property is being conducted pursuant to, *inter alia,* Bankruptcy Code Section 363(f). All liens will attach to the sale proceeds in the same order and priority as they existed on the Debtor's Petition Date.

### III. The Successful Bidder Should Be Afforded Protection Under Bankruptcy Code Section 363(m)

33. Bankruptcy Code Section 363(m) affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, Bankruptcy Code Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m). *See Allstate Ins. Co. v. Hughes* 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m)...provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

34. The Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor in possession or trustee in order to demonstrate a lack of good faith. *See Kabro Assoc. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a

purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"). See *also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

35.     Subject to Court approval, the Property will be sold at a public auction sale. Each sale process will be conducted at arm's length through an independent process. As such, the Debtor submits that the successful bidders should be afforded good faith purchaser status under Bankruptcy Code Section 363(m).

IV.     **The Proposed Process for the Debtor to Designate A Stalking Horse and Provide Breakup Fees Should Be Approved.**

36.     The Debtor also seeks authority to designate a stalking horse and offer customary bid protections including a break-up fee as part of the Bidding Procedures. In the event the Debtor designates a stalking horse, that party will subject their bid to higher and better offers, and likely may request the enticement of a break-up fee if the stalking horse loses at auction to another bidder. The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by locking in a purchase price "floor" before exposing an asset to auction. As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process. Thus, the use of bidding protections, including breakup fees, has become an established practice in Chapter 11 cases.

37.     Bankruptcy courts have approved bidding incentives, similar to the breakup fee, under the business judgment rule, which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See*

*e.g., In re BearingPoint, Inc.,* No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.,* No. 0911701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8% of the purchase price); *In re Steve & Barry's Manhattan LLC,* No. 0812579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving break-up fee of 2% of the purchase price); *In re Fortune Fine Jewelry and Silverware, LLC,* No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (approving break-up fee of approximately 2.8% of the purchase price); *In re Bally Total Fitness of Greater New York, Inc.,* No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) (approving break-up fee of 4.3% of the purchase price).

38.     With respect to breakup fees in bankruptcy cases, courts have generally considered three factors when assessing proposals for such fees: (a) whether the relationship of the parties who negotiated the breakup fee is tainted by self-dealing or manipulation; (b) whether the fee hampers, rather than encourages, bidding; and (c) whether the amount of the fee is unreasonable relative to the proposed purchase price. *See In re Integrated Res., Inc.,* 147 B.R., at 657.

39.     The Debtor believes that the ability to select a stalking horse and allowance of a breakup fee is beneficial to its estate and its creditors, as a stalking horse bid would establish a floor for further bidding and potentially increase the value of the Property for the benefit of the estate. Moreover, this Motion proposes to provide parties notice with regard to any stalking horse, which will state the Debtor's designation of a stalking horse, including terms for payment of any breakup fee. Parties will have an opportunity to object to the Debtor's designation of a stalking horse and payment of a breakup fee. If a party chooses to object within five days from the filing of the stalking horse notice and such objection cannot be resolved consensually, the Debtor will

seek approval of the stalking horse and breakup fee by scheduling a hearing with the Court. If no objections to the stalking horse notice are received, the stalking horse and breakup fee shall be deemed approved by the Court without the need for further Court order. Further, if the breakup fee were to be paid, it will be because the Debtor has received a higher or otherwise superior offer.

## CONCLUSION

40. Thus, the Bidding Procedures are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances because the Bidding Procedures are designed to maximize the value to be received by the Debtor's estate.

41. The Debtor has served this application on the Office of the United States Trustee, the holders of twenty largest unsecured claims, the taxing authorities, Ramim and all parties who have filed notices of appearance in this case. The Debtor submits that such service be deemed appropriate and sufficient under the circumstances.

42. No prior application for the relief sought has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter the Order granting the relief requested herein and such other and further relief as may be just and appropriate.

Dated:  New York, New York
         February 13, 2023

                          DAVIDOFF HUTCHER & CITRON LLP
                          *Attorneys for the Debtor*
                          605 Third Avenue
                          New York, New York 10605
                          (212) 557-7200

                         By: */s/ Jonathan S. Pasternak*
                               Jonathan S. Pasternak