DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    Chapter 11
                                                          Case No. 22-41444  (NHL)
NUVO TOWER, LLC,


                              Debtor.
------------------------------------------------------------X

## FOURTH AMENDED PLAN OF REORGANIZATION

Nuvo Tower, LLC (the "Debtor") hereby proposes the following Fourth Amended

Plan of Reorganization pursuant to the provisions of Title 11 of Chapter 11 of the United

States Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by

the Debtor, the following terms shall have the respective meanings set forth below (such

meanings to be equally applicable to the singular and plural forms of the terms defined,

unless the context otherwise requires):

1.1   "Administrative Claims" shall mean all costs and expenses of administration

of the chapter 11 case Allowed under sections 503(b) or 330(a) of the Code and that are

entitled to priority under section 507(a)(2) of the Code.

1.2   "Allowed" shall mean that portion of a Claim or Interest that, (i) has been

timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3   "Bankruptcy Code" shall mean Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Case.

1.4   "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York, Brooklyn Division.

1.5   "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Case.

1.6   "Ramim" shall mean Ramim, LLC.

1.7   "Ramim Class 2 Secured Claim" shall mean the Class 2 Secured Claim of Ramim against the Debtor in the Allowed amount of $2,250,709.05, plus accrued interest on the unpaid principal amount of $1,500,000 at an interest rate to be determined by the Bankruptcy Court, which Claim is secured by a lien on and against the Property. The Debtor has previously disputed the amount of Ramim's claim via a claim objection filed on September 20, 2022. Said claim objection is currently pending before the Bankruptcy Court and Ramim disputes the Debtor's amount of $2,250,709.05.

1.8   "Broker" shall mean any duly licensed professional real estate or mortgage broker, engaged by the Debtor.

1.9   "Cash" shall mean legal tender of the United States of America or cash

equivalents.

1.10  "Chapter 11 Case" shall mean the above captioned proceeding.

1.11  "Claim" is defined in section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under sections 550 and 553 of the Code and a claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under section 507(a) of the Code.

1.12  "Closing" shall mean the closing on the refinance or sale of the Property, whether such sale is effectuated through a Sale Contract or auction.

1.13  "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. section 101 et. seq. as amended from time to time and applicable to this case.

1.14  "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15  "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to section 1129 of the Code confirming the Plan.

1.16  "Credit Bid" shall mean the rights of Ramim under section 363(k) of the Code to bid all or a portion of the amount of $2,875,948.66, as applicable, at the auction(s) to be conducted pursuant to Articles III and IV of the Plan.

1.17  "Debtor" shall mean Nuvo Tower LLC.

1.18  "Disbursing Agent" shall mean Davidoff Hutcher & Citron LLP, who shall act in such capacity in order to effectuate the payment of distributions under the Plan.

1.19  "Disputed" shall mean a Claim or Interest, or any portion of a Claim or Interest,

3

that is not Allowed.

1.20 "Distribution Fund" shall mean the net proceeds of sale or refinance of the Property, respectively.

1.21 "Effective Date" shall mean the date upon which the Confirmation Order becomes a Final Order.

1.22 "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending or in the case of an appeal, any such appeal or petition for review, rehearing or certiorari has been dismissed.

1.23 "Impaired" shall mean a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.24 "Interest" shall mean the rights of the members of the Debtor.

1.25 "Mechanic's Lienors" shall mean those parties who have properly filed mechanics' liens against the Property.

1.26 "Property" shall mean the 4 contiguous lots owned by the Debtor, located at 2954-2958 Brighton 6th Street and 6-7 Brighton Fifth Place in the Brighton Beach section of Brooklyn, which lots are intended for construction of a 23-unit condominium complex.

1.27 "Petition Date" shall mean June 22, 2022.

1.28 "Plan" shall mean this Fourth Amended Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Code.

1.29 "Priority Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under section 507 of the Code.

1.30  "Ramim" shall mean Ramim LLC, the successor-in-interest to Ramim.

1.31  "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.32 "Professionals" shall mean those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Code.

1.33 "Sale/Auction Closing Date" shall mean a date on or before May 15, 2023, in the event the Debtor has not previously refinanced the Property or sold at a private sale.

1.34  "Sale Contract" shall mean a written agreement entered into between the Debtor and a third party in an amount not less than the Class 2 Secured Claim. The Sale Contract shall provide for a deposit that is no less than five percent (5%) of the purchase price, to be held by the Disbursing Agent. The deposit shall be made in cash or official bank, certified or cashiers check (collectively, "Acceptable Funds") and shall be delivered to the Disbursing Agent upon execution of the Sale Contract.

1.35  "Schedules" shall mean the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.36 "Secured Claim" shall mean a Claim secured by a valid, perfected, and enforceable lien in the assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant

to section 506(a) of the Code or acknowledged by the Debtor in writing or provided for in this Plan.

1.37    "Third Party Highest Bidder" shall mean a party other than Ramim (or its nominee) who is the highest bidder at an auction conducted pursuant to Article 4.2 of the Plan.

1.38    "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim including, without limitation, Claims based upon pre-petition trade accounts payable, or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1:** shall consist of the Allowed Secured Claims of the City of New York for unpaid real estate taxes.

**Class 2:** shall consist of the Secured Claim of Ramim.

**Class 3**: shall consist of the Allowed Secured Claims of the Mechanic's Lienors.

**Class 4:** shall consist of all Allowed Unsecured Claims of the Debtor.

**Class 5:** shall consists of interests in the Debtor.

In accordance with section 1123(a)(1) of the Code, Priority Tax (other than Class 1) Administrative Claims have not been classified and thus are excluded from these Classes. There are no priority claims other than Class 1 real estate tax Secured Claims.

## ARTICLE III

## <u>TREATMENT OF CLAIMS UNDER THE PLAN</u>

**3.1   Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction their respective Claims against the Debtor.

a)   <u>Allowed Administrative Claims other than Claims of Professionals:</u>  These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to those Claims.

b)   <u>Allowed Claims of Professionals</u>: The Debtor has two Professionals whose employment was approved by the Bankruptcy Court: (i) Debtor's current counsel, Davidoff Hutcher & Citron LLP, and (ii) the Debtor's real estate broker, Rosewood Realty Group. The Allowed Administrative Claims of Professionals shall be paid in full, in Cash, from the Distribution Fund, upon the later of (i) allowance by the Court pursuant to sections 330 or 506(c) of the Code or (ii) the Effective Date, unless otherwise agreed by such Professional(s).

c)   <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. sections 1930 and 31 U.S.C. section 3717 prior to the Confirmation Date shall be payable by the Debtor, in full, in Cash, by or shortly after the Effective Date. Thereafter such fees shall be paid by the Debtor, in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor until the Chapter 11 Case is converted, dismissed, or closed.

**3.2     <u>Class 1:</u>** The Allowed Class 1 real estate tax Secured Claims of the City of, New York, together with any unpaid statutory interest accrued thereon through the Sale/Auction Closing Date, shall be paid in full, in Cash from the Distribution Fund upon

the refinance or Sale/Auction Closing Date. The Class 1 Secured Claim is unimpaired and deemed to accept the Plan.

   **3.3**  **Class 2**: The Ramim Class 2 Secured Claim, together with accrued interest on the unpaid principal amount of $1,500,000, at the statutory interest rate of 9% accrued thereon from the Petition Date, shall be paid up to 100% of its allowed claim based on the results of the Sale/Auction, in Cash from the Distribution Fund upon the refinance of the Property or the Sale/Auction Closing Date, whichever is sooner. The Class 2 Secured Claim is impaired and entitled to vote on the Plan.

   **3.4**  **Class 3:** The Allowed Mechanic's Lien Class 3 Secured Claims, shall be paid up to 100% of its allowed claim based on the results of the Sale/Auction, in Cash from the Distribution Fund upon the refinance of the Property or the Sale/Auction Closing Date, whichever is sooner. The Class 3 Allowed Secured Claim is impaired and is entitled to vote on the Plan.

   **3.5**  **Class 4:** The Allowed General Unsecured Class 4 Claims, together with any unpaid statutory late fees, penalties, interest, costs, and reasonable attorneys' fees accrued thereon through the Sale/Auction Closing Date, shall be paid up to 100% of its allowed claim based on the results of the Sale/Auction, in Cash from the Distribution Fund upon the refinance of the Property or the Sale/Auction Closing Date, whichever is sooner. The Class 4 Allowed General Unsecured Claims are impaired and are entitled to vote on the Plan.

   **3.6**  **Class 5:** The holders of Class 5 interests shall continue to retain their interests in the Debtor after the Effective Date, and shall receive any net proceeds after payment in full to all Allowed classified and unclassified Claims. Class 5 interests are unimpaired under the Plan and are deemed to accept the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**4.1**        **Plan Funding.** This Plan shall be funded with the net proceeds of (a) sale of the Property or (b) the refinance of the Property, as applicable. All distributions shall be made by the Disbursing Agent in accordance with Article III herein, except that to the extent that a Claim becomes an Allowed Claim after the Effective Date, within ten (10) days after the order allowing such Claim becomes a Final Order.

**4.2**        **Means for Implementation: Refinance, Sale or Auction.**

4.2(a)    Subject to the time deadlines set forth in this Article IV, the Debtor shall market the Property immediately, through a licensed real estate broker, subject to Court approval, to assist in such efforts, in order to refinance or sell and liquidate the Property for the highest and best price on or before May 15, 2023. Upon Closing, the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in the same manner as provided for in Article III herein.

4.2(b)  **The Property**. In the event that the Debtor has not previously refinanced or sold the Property at private sale, the Debtor shall conduct a public auction of the Property on or before May 15, 2023.

4.2(b)(1)  The sale of the Property, whether pursuant to a Sale Contract or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing and the Class 1, 2 and Class 3 Allowed Secured Claims are paid in full.

4.2(b)(2)    At an auction conducted pursuant to subsections 4.2(b)(1) above or otherwise, Ramim shall be entitled to and have the absolute right to Credit Bid.

4.2(b)(3) At an auction:

(i)       If Ramim is the highest bidder, no deposit shall be required and the Credit Bid shall be applied to the payment of the purchase price except that Ramim shall also be responsible to pay, at Closing, 1.75% of the Credit Bid Amount to the Debtor's real estate broker and shall also assume the obligation to pay the Class 1 Real Estate Tax Secured Claims.

(ii)      If Ramim is not the highest bidder, immediately following the auction, the Third-Party Highest Bidder shall execute the Sale Contract which shall provide, among other things, that: (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the thirtieth day after the date of the auction; (ii) that time is of the essence with respect to the Closing date; and (iii) the purchaser shall pay in addition to the auction sale price, the buyer's or bidder's commission.

(iii)     If the Third-Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan, and the Debtor shall reserve the second highest bidder. If Ramim does not purchase the Property at the auction and the Third Party Highest Bidder is unable to close within 45 days of the Auction sale, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the  Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

## ARTICLE V
## **RESOLUTION OF DISPUTED CLAIMS & RESERVES**

**5.1**    **Objections**. The Debtor or a party in interest shall file all objections to the

allowance of a Claim with the Bankruptcy Court, in writing, no later than the Confirmation Date.

**5.2**     **Amendment of Claims**. A Claim may not be amended after the Effective Date unless agreed upon, in writing, by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

**5.3**     **Reserve for Disputed Claims**. The Debtor shall reserve, on account of each holder of a Disputed Claim, in cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of distribution. The cash so reserved for the holder of such Disputed Claim, shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

**ARTICLE VI**
**GENERAL AND MISCELLANEOUS PROVISIONS**

**6.1**     **Modification of the Plan**. The Debtor reserves the right, in accordance with Section 1127 of the Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

**6.2**     **Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**6.3**     **Payment Dates.** If any payment or act under the Plan is required to be made

or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day and shall be deemed to have been completed timely.

      **6.4**       **Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:

NUVO TOWER LLC
2112 Coney Island Avenue
Brooklyn, NY 11223
Attn: Haim Pinhas and Steve Lamido, Managers

With a copy to:

DAVIDOFF HUTCHER & CITRON LLP
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Attn: Robert L. Rattet, Esq.
    Jonathan S. Pasternak, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

      **6.5**       **Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

      **6.6**       **Applicable Law.** Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

      **6.7**       **Successors and Assigns.** The rights and obligations of any entity named or

referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**6.8     Reservation of Rights.** Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this chapter 11 case.

**6.9     U.S. Trustee Fees and Post Confirmation Reports.** The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, on behalf of the Debtor, as applicable, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

**6.10     Post Confirmation Management.** The Debtor will continue to be managed post-Confirmation Date by Haim Pinhas, the Debtor's managing member. Mr. Pinhas shall not receive any compensation for his continued management services until such time as all creditors are paid to the extent provided for and in accordance with the Plan.

**ARTICLE VII**
**EFFECT OF CONFIRMATION, DISCHARGE,**
**<u>SURRENDER AND CANCELLATION OF CLAIMS</u>**

**7.1     No Discharge/Discharge Under the Plan.** Because the Plan might result in a liquidation of the Property, the Confirmation Order in such an event, will not operate as a discharge pursuant to Section 1141(d)(1) of the Code with respect to the Debtor. In the event, however, that the Debtor refinances the Property, the Debtor shall be entitled to a discharge

pursuant to Section 1141(d)(1) of the Code.

*7.2* **Exculpation***. Neither the Debtor nor any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 hereof shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 7.2 or 7.3 hereof enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the*

*environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any claim of Ramim or any of its affiliates, including, without limitation, any claim arising out of or under any guarantees executed in connection with the Class 2 Secured Claims (the "Guaranty"), or any environmental law, nor shall anything in Sections 7.2 or 7.3 herein enjoin Ramim from bringing any claim, suit or action or other proceeding under or arising out of the Guaranty or any environmental law, or (c) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

*7.3     Confirmation Injunction. Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:*

*(i)     Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interests;*

*(ii)     Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;*

*(iii)     Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor;*

*(iv)     Asserting any setoff, right of subrogation, or recoupment of any kind,*

*directly or indirectly, against the Debtor, the assets of the Debtor; and*

**(v)    *Proceeding in any manner and any place whatsoever that does not conform***

*to or comply with the provisions of the Plan.*

## ARTICLE VIII
## <u>CONDITIONS PRECEDENT</u>

8.1    <u>Conditions to Confirmation</u>. The following are conditions precedent to

confirmation of the Plan, each of which may be satisfied or waived in accordance with section

8.3 of the Plan.

(a)    The Bankruptcy Court shall have approved by Final Order a

disclosure statement with respect to the Plan.

(b)    The Confirmation Order shall provide for the conditional sale of the

Property, whether pursuant to a Sale Contract or auction, free and clear of

all Claims, liens, and encumbrances.

8.2    <u>Conditions to Effective Date</u>. The following are conditions precedent to

the Effective Date, all of which may be satisfied or waived in accordance with Article 8.3 of

the Plan.

(a)    The Confirmation Order shall have been entered and have become a Final

Order.

(b)    The Debtor shall have sufficient Cash necessary to pay Claims required

to be paid on the Effective Date.

## ARTICLE IX
## <u>DISTRIBUTIONS AND UNCLAIMED PAYMENTS</u>

Except as otherwise provided herein, in the event any claimant fails to claim any

distribution within 120 days from the date of such distribution, such claimant shall

forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be disbursed to equity, on a Pro Rata basis and according to the percentage of membership interest held by such Interest holder.

## ARTICLE X
## DUTIES AND RIGHTS OF THE DISBURSING AGENT

The Disbursing Agent shall make and effectuate all distributions required under the Plan. All fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of presentation of invoice.

## ARTICLE XI
## POST-CONFIRMATION ACTIVITIES OF THE DEBTOR

**11.1**    The Debtor shall continue its efforts to market the Property for refinance or sale and upon the closing of such refinance or sale, the net proceeds thereof shall be distributed in accordance with the terms of this Plan.

**11.2**    Once the Debtor has liquidated the Property, it shall cause "final" tax returns to be filed with New York State Department of Taxation and Finance as well as the Internal Revenue Service and shall file such additional documents as are necessary to cause the formal dissolution of the Debtor with the New York State, Secretary of State.

**11.3    Post-Confirmation Date Fees and Reserve.** The Debtor shall pay all post-

Confirmation Date fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.

## ARTICLE XII
## <u>EVENTS OF DEFAULT</u>

**12.1**      An Event of Default shall occur if (a) the deadlines set forth for the sale and Closing of the Property set forth in Article IV are not met, or (b) the Disbursing Agent shall fail to make any payment when due or (c) the Debtor shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor, Disbursing Agent, and the Bankruptcy Court.

**12.2**      Following an Event of Default, if such Default has not been cured within twenty (20) days thereafter, (a) Ramim may set a sale pursuant to Sections 363 and 1123(B)(4) of the Code with the right to Credit Bid as applicable, subject to the payment requirements of Section 4.2 of the Plan; and (b) any holder of a Claim, payment of which is in default, shall have the right to commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment.

## ARTICLE XIII
## <u>EXECUTORY CONTRACTS</u>

13.1    Upon the Effective Date, all of the Debtor's executory contracts shall be deemed assumed and free or default on the part of the Debtor.

## ARTICLE XIV
## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)    To determine all controversies relating to or concerning the allowance of and/ or distribution on account of such Claims or Interests upon objection thereto which may be filed by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Code, including any and all applications for compensation for professional and similar fees

(c)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)    To determine all disputed, contingent or unliquidated Claims and all disputed Interests;

(e)    To determine requests to modify the Plan pursuant to Section 1127 of the Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

(f)    To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(g)    To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan;

(h)    To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)    To resolve any disputes which may arise concerning the sale or auction of the Property or satisfaction of Allowed Secured Claims as required under the Plan;

(j)    To determine such other matters as may be provided for in the order of the

Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the

Bankruptcy Code;

(k)    If necessary, to implement any post-Effective Date sale of the Property or

the refinance or sale of the Property, including any issues and dispute arising therefrom;

and

(l)    To enter a final decree closing the Chapter 11 Case.


Dated: Brooklyn, New York
        February 15, 2023

NUVO TOWER LLC

By: */s/ Haim Pinhas*
      Haim Pinhas, Managing Member

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200

By: */s/ Robert L. Rattet*
      Robert L. Rattet